# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| QUINTEZ TALLEY | : | CIVIL ACTION |
| --- | --- | --- |
| v. | : | |
| MAJOR CLARK, LAURA BANTA, M. NASH, THOMAS GRENEVICHY, GEORGE ANDRAKA, SGT. WORTH, SGT. BISSELL, C/O BARRETTO, C/O BANGGERT, C/O MARTIN, C/O HAYES, C/O MARTINEZ, C/O VOURHEES, C/O BROWN, SGT. RIVERA, C/O WEST, C/O CHOI, UNKNOWN CORRECTIONAL OFFICERS, PA DEPARTMENT OF CORRECTIONS, DR. RICHARD DOYLE, R. LADDNNE, MHM, CHIEF SAFETY & ENVIRONMENTAL PROTECTION DIVISION and J. WETZEL | : | NO. 19-253 |

## MEMORANDUM OPINION

**Savage, J.**                                                                                                          **November 20, 2019**

Plaintiff Quintez Talley, a prisoner proceeding *pro se* and *in forma pauperis*, filed this civil action asserting that the defendants violated the Americans with Disabilities Act[1] (ADA), and the First, Eighth and Fourteenth Amendments.[2] He also brings claims under state law and for federal conspiracy and injunctive and declaratory relief. He has sued the Pennsylvania Department of Corrections (DOC), several of its officers and employees, a private contractor who provided services to the DOC, and its employee.[3]

---

[1] Talley states in paragraph 8 of his complaint that this action is authorized by the Americans with Disabilities Act (ADA) and/or Rehabilitation Act (RA), 29 U.S.C. § 701, but he asserts no RA claim. Compl. ¶ 8 (ECF No. 1). In any event, our analysis of Talley's ADA claim would apply to any RA claim because the RA is "substantially similar" to the ADA. *Id.*

[2] June 27, 2019 Order (ECF No. 6). This is the ninth of 14 civil actions that Talley has filed in this district since 2018 against Department of Corrections (DOC) personnel and others working at DOC prisons.

[3] Compl. ¶¶ 62-74.

1

Moving Defendants[4] seek dismissal of the complaint for failure to exhaust administrative remedies pursuant to the Prison Litigation Reform Act (PLRA).[5] Because Talley failed to exhaust his administrative remedies, we shall grant the motion and dismiss the federal claims. We shall decline to exercise supplemental jurisdiction over the state claims.

## Background[6]

On January 4, 2018, Talley was housed in a Psychiatric Observation Cell (POC) at the DOC's State Correctional Institution at Graterford.[7] He informed Doyle and Ladonne that while on the Restricted Housing Unit (RHU) he had been subjected to "an

---

[4] Moving Defendants include the DOC; Secretary Wetzel; Major Clark; Laura Banta; M. Nash; Thomas Grenevich; George Ondrejka; R. Ladonne; Sergeants Worth, Bissell and Haines; Corrections Officers Vorhees, Barreto, Bangert, Martin, Martinez, Brown and West (collectively, Commonwealth Defendants); and Chief of Safety and Environmental Protection Division (CSEPD) Robert McSurdy. Commw. Defs.' Mot. to Dism. (ECF No. 11); CSEPD's Mot. to Dism. (ECF No. 14). The correct titles and spellings are supplied by Defendants. Talley also sues MHM, Dr. Richard Doyle, and Unknown Correctional Officers. These defendants are not parties to the motions to dismiss. However, where a court grants other defendants' motion to dismiss, the court may, on its own initiative, dismiss claims as to non-moving defendants if the claims against the non-moving defendants suffer from the same defects raised in the moving parties' motions. *Minn. Lawyers Mut. Ins. Co. v. Ahrens*, 432 F. App'x 143, 148 (3d Cir. 2011) (quoting *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980) (stating that the court may *sua sponte* dismiss a claim as to non-moving defendants where the inadequacy of the claim is clear)). A claim against a non-moving party may be dismissed if the claims against all defendants are "integrally related" or where the non-moving defendants are in a similar position to the moving defendants. *Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993). Therefore, to the extent the deficiencies cited in the motions to dismiss also apply to these defendants, we consider them.

[5] Commonwealth Defendants and McSurdy filed their motions to dismiss on September 3 and October 10, 2019, respectively. Commw. Defs.' Mot. to Dism. (ECF No. 11); CSEPD's Mot. to Dism. (ECF No. 14). Because Talley has not filed a response to either of Defendants' motions, we could have granted them as uncontested under Local Rule of Civil Procedure 7.1(c). Mindful of Talley's *pro se* status, we did not. Now that he is warned of the consequences of failing to file responses to motions, we may grant as uncontested future motions to which he has filed no response.

[6] The following facts are taken from the detailed complaint and are deemed true for the purposes of the motion.

[7] Compl. ¶¶ 2, 16-17. A POC is "[a] cell located in the infirmary area of the facility that is used to hold inmates who are mentally decompensating to the point where they are considered a danger to themselves, other inmates, and/or property. These cells provide a means of re[s]training (sic) the inmate, if necessary, and allow for constant supervision of the inmate to be maintained in order to treat the inmate." *Id.* ¶ 27 (quoting DC – ADM 13.8.01, Glossary of Terms).

2

ongoing campaign for harassment" and would kill himself if returned there.[8] They responded that they had orders to discharge him back to the RHU and walked away.[9] Talley claims that he was transferred to the RHU rather than the Diversionary Treatment Unit so that another inmate, Patrick Harrison, could more easily harass him.[10] During the transfer to the RHU a few hours later, Worth, Martin, Voorhees and Bangert called Talley a "pussy," described his sheets as "pissy," and initially hid some of his books, which they returned before he was left in his new cell.[11]

On January 8, Talley refused his breakfast tray from Voorhees.[12] In response, Harrison placed pancakes and a box in Talley's cell, which made him suicidal.[13] Talley told an unknown corrections officer, who responded, "We'll know you['re] dead when you['re] either non responsive or charred to death!"[14] Shortly thereafter, Harrison dumped mop water in Talley's cell.[15] Arguing with Talley, Harrison told him he would rape him.[16] Talley then set his cell on fire, as he had done twice before, and told Voorhees he was suicidal.[17] Voorhees responded that no one cared if he killed himself and that someday prison staff would not arrive in time to save him.[18] Martin threatened to "whip [Talley's] ass" or have Harrison do it and stated that prison staff would only rescue Talley if the fire

---

[8] *Id.* ¶ 16.
[9] *Id.*
[10] *Id.* ¶¶ 23-25.
[11] *Id.* ¶¶ 17, 19-21.
[12] *Id.* ¶ 29.
[13] *Id.* ¶¶ 30-31, 33.
[14] *Id.*
[15] *Id.* ¶ 35.
[16] *Id.* ¶ 36.
[17] *Id.* ¶¶ 37, 39.
[18] *Id.* ¶ 39.

3

alarm went off.[19] He also shouted that it was cold outside and that the other inmates should blame Talley if they had to evacuate.[20]

The fire burned "for hours," but the defendants did not evacuate Talley.[21] Instead, Bissell stuffed a coat under his cell door and stated that Clark had instructed prison staff to let him die.[22] Bissell, Martin and Barreto also poured a large bucket of water under the door after Talley removed the coat.[23] Neighboring inmates complained that Talley had stated that he was suicidal, but Martin, Barreto and Bangert replied that Talley deserved to die.[24]

Talley passed out.[25] When he awoke the fire was no longer burning, water was on his floor, and an unknown corrections officer asked what he wanted for dinner.[26] Talley told him about the fire, but the officer responded that he had not been informed about it.[27] Choi came to his cell and asked about the fire.[28] Talley told Choi and the officer about Harrison's harassment, but Choi laughed and the officer walked away.[29] Harrison then arrived "cussing and hollering" at Talley while the other inmates and staff laughed.[30]

An unknown corrections officer returned with Harrison, who made more physical

---

[19] *Id.* ¶¶ 40-41.
[20] *Id.* ¶ 41.
[21] *Id.* ¶ 42.
[22] *Id.*
[23] *Id.* ¶¶ 43- 44.
[24] *Id.* ¶ 46.
[25] *Id.* ¶ 47.
[26] *Id.*
[27] *Id.* ¶ 48.
[28] *Id.* ¶ 49.
[29] *Id.*
[30] *Id.* ¶ 51.

4

and sexual threats against Talley.[31]  The officer and other inmates laughed.[32]  Talley began setting fire to toilet paper and sliding it under his cell door "in hopes of getting a higher authority" to whom he could report his suicidal thoughts and Harrison's threats.[33]  West threw a bucket of water on the burning paper, yelled at Talley, and threatened him physically.[34]  Choi told Talley that if he did not extinguish the fire burning inside his cell, West, Rivera and he would "fuck [Talley] up."[35]  Instead, a fire extinguisher was used to put out the fire.[36]  Talley was taken to the medical department and examined, then sent to the hospital for carbon dioxide tests.[37]

Upon his return, Talley was sent to the POC, but Matthews informed Talley that the DOC had entered an order prohibiting him from being admitted there.[38]  Talley confirmed the accuracy of Matthews' statement with another corrections officer the following day.[39]

Talley alleges that the DOC, Wetzel and McSurdy conspired to violate his rights under the ADA, and the First, Eighth and Fourteenth Amendments when they circulated a memorandum prohibiting him from being admitted to the POC.[40]  He alleges that Voorhees violated his rights under the ADA, and the Eighth and Fourteenth Amendments

---

[31] *Id.* ¶ 52.
[32] *Id.*
[33] *Id.* ¶ 53.
[34] *Id.* ¶ 54.
[35] *Id.* ¶ 55.
[36] *Id.* ¶ 56.
[37] *Id.*
[38] *Id.* ¶¶ 57-58.  It is not clear whether Talley was admitted to the POC.
[39] *Id.* ¶ 59.
[40] *Id.* ¶ 62.

5

when he failed to contact a mental health professional after Talley told him he was suicidal.[41] He alleges that Clark, Banta, Ondrejka, Grenevich, Nash (collectively, PRC Defendants), Doyle and Ladonne conspired to violate his rights under the ADA when Doyle and Ladonne, acting upon orders from the PRC Defendants, discharged Talley from the POC when he was entitled to the services provided there.[42] He also alleges that the DOC, Doyle and Ladonne violated the Eighth and Fourteenth Amendments, and that MHM, Doyle and Ladonne committed medical malpractice and negligence, when Doyle and Ladonne discharged him.[43]

Talley alleges that the DOC, Wetzel and McSurdy violated his rights under the ADA, and the Eighth and Fourteenth Amendments by failing to install sprinklers in the RHU in light of Talley's propensity for setting fires.[44] He alleges that the DOC and unknown corrections officer violated his rights under the ADA, and the Eighth and Fourteenth Amendments when he failed to keep Talley on suicide watch after Talley informed the officer that he was suicidal.[45] He alleges that Bissell, Worth, Brown, Barreto, Bangert, Martin, Martinez, Voorhees (collectively, the First Shift Defendants), the PRC Defendants, Choi and unknown corrections officers conspired to violate his rights under the First and Eighth Amendments when they gave Harrison "immunity" to harass Talley in retaliation for his having filed lawsuits against the DOC.[46] He alleges that the First Shift Defendants violated his Eighth Amendment rights when they left him in his burning cell

---

[41] *Id.* ¶ 63.
[42] *Id.* ¶ 64.
[43] *Id.*
[44] *Id.* ¶ 65.
[45] *Id.* ¶ 66.
[46] *Id.* ¶¶ 67, 69.

6

for hours.⁴⁷

Talley alleges that Martin committed assault by physically threatening him and that West, Choi and the unknown corrections officers committed assault and battery by threatening him and then extracting him from his cell.⁴⁸ He also alleges that the DOC, Wetzel and Rivera breached Wetzel's settlement agreement in another matter when Rivera issued a misconduct against him for his suicide attempt.⁴⁹

**Analysis**

*Federal Claims – Exhaustion under the PLRA*

Before filing suit challenging prison life under any federal law, a prisoner must exhaust all available administrative remedies. *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018). The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983 or any other federal law] until administrative remedies as available are exhausted." 42 U.S.C. § 1997(e)(a). To properly exhaust, the prisoner must comply with all deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). He must pursue all available steps in the process. *Id.*; *see also Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016); *Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004). If he fails to do so, his action must be dismissed. *Spruill*, 372 F.3d at 227.

The exhaustion requirement is mandatory. A court may not excuse a failure to exhaust even if there are "special circumstances." *Ross*, 136 S. Ct. at 1856. The only exception is where an administrative remedy is not available. Section 1997e(a) of the PLRA only requires the exhaustion of available remedies. Stated differently, if the

---

⁴⁷ *Id.* ¶ 68.

⁴⁸ *Id.* ¶ 71.

⁴⁹ *Id.* ¶ 72.

administrative remedies are not available, there is nothing to exhaust.

Pennsylvania Department of Corrections Administrative Regulation 804 ("DC-ADM 804") mandates that inmates "must submit a grievance to the Facility Grievance Coordinator/designee, usually the Superintendent's Assistant, within 15 working days after the event upon which the claim is based."[50] If an inmate appeals the grievance officer's decision, he must do so to the Facility Manager "within 15 working days from the date of the initial review response/rejection."[51]

Talley argues that the grievance procedure was "unavailable" to him.[52] According to Talley, he was on suicide watch and unable to possess a writing utensil from January 6 to February 9, 2018, rendering him physically unable to file a timely grievance.[53]

The administrative remedies are deemed unavailable where: (1) the administrative procedure, in practice, does not afford inmates a real chance for redress because the prison administrators refuse or are unable to process the grievance; (2) the procedure is so "opaque" that inmates cannot "discern or navigate it"; and (3) the prison administrators prevent or thwart inmates from pursuing grievances through the process by "machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859-60.

Here, the process was available to Tally. He chose not to avail himself of the process. He did not file a grievance because he believed it would be futile due to its untimeliness. However, futility does not excuse his failure to address his complaints through the grievance process. *Ross*, 136 S. Ct. at 1859-60; *see also Ahmed v.*

---

[50] DC-ADM 804.VI.A.8.

[51] DC-ADM 804.VI.C.1.b.

[52] Compl. ¶ 61.

[53] *Id.*

*Dragovich*, 297 F.3d 201, 206 (3d Cir. 2002)); *Nyhuis v. Reno*, 204 F.3d 65, 66-67 (3d Cir. 2000). DC-ADM 804 allows for extensions of time in certain circumstances. These circumstances include transfer or authorized absence from the facility, mail delays, and "any other reason the Facility Grievance Coordinator/designee deems appropriate."[54] Talley did not request the grievance officer to excuse a late-filed grievance because he lacked access to paper or a writing instrument. Because Talley did not ask for an extension to file an out-of-time grievance, he has not substantially complied with the administrative remedy to exhaust claims. *See Harper v. Jenkin*, 179 F.3d 1311, 1312 (11th Cir. 1999) (prison allowed grievances to be filed late for good cause and because prisoner did not seek permission to file late, he did not exhaust administrative remedies).

Talley did not pursue all available avenues in the grievance process. Because he has failed to exhaust his administrative remedies as required under 42 U.S.C. § 1997e(a), his federal claims are barred.

*State Law Claims*

"Where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original) (citing *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)); *see also* 28 U.S.C. § 1367(c)(3). No exceptions apply here.

There is no reason to retain jurisdiction over Talley's state law claims, which may be asserted in state court. *See, e.g., Segers v. Williams*, No. 13-2413, 2014 WL 285078,

---

[54] DC-ADM 804 § 1.C.2.c.

at *5 n.9 (E.D. Pa. Jan. 27, 2014). Thus, we shall decline to exercise supplemental jurisdiction.

## Conclusion

Because Talley failed to exhaust his administrative remedies under the PLRA, we shall grant the defendants' motion and dismiss the federal claims. We decline to exercise supplemental jurisdiction over his state law claims. Therefore, this action will be dismissed with prejudice as to all defendants as to the federal law claims and without prejudice as to the state law claims.